330 So.2d 697 (1976)
THE FLORIDA BAR, Petitioner,
v.
Frederick C. PRIOR, Respondent.
No. 46442.
Supreme Court of Florida.
March 31, 1976.
Richard C. McFarlain, Tallahassee, for The Florida Bar, petitioner.
William H. Pruitt, West Palm Beach, for respondent.
PER CURIAM.
The petition for suspension filed by The Florida Bar is granted, and Frederick C. Prior, respondent, is hereby suspended from the practice of law in Florida until further order of this Court, effective thirty days from this date.
OVERTON, C.J., ENGLAND and HATCHETT, JJ., and McCRARY, Circuit Judge, concur.
OVERTON, C.J., and ENGLAND, J., concur specially with an opinion.
BOYD, J., concurs in part and dissents in part with an opinion.
ROBERTS, J., dissents with an opinion.
ADKINS, J., dissents and concurs with ROBERTS, J.
OVERTON, Chief Justice, and ENGLAND, Justice (concurring specially).
This cause was initiated by a petition of The Florida Bar to suspend Frederick C. Prior from the practice of law in Florida because of his multiple felony convictions in the United States District Court for the Middle District of Florida.[1] Respondent has petitioned to "modify or terminate" the suspension under Rule 11.07(3) of the Integration Rule of The Florida Bar, thereby causing the matter to be deferred until the Court enters an order on his petition. For the reasons which follow, we believe that respondent should have been summarily suspended from the practice of law.

Chronology of the Case
The issue of suspension before us stems from respondent's testimony before a federal grand jury investigating possible violations of the Internal Revenue Code and other federal criminal statutes. The focus of the investigation was former State Comptroller Fred O. Dickinson, Jr.
On June 6, 1974, respondent was indicted on seven counts of violating Title 18, Section 1623, of the United States Code, which makes it a felony knowingly to make any false material declaration in sworn testimony before a federal grand jury. On September 25, a jury found respondent guilty on five of the seven counts, and on November 1 the trial judge adjudicated him guilty and sentenced him to imprisonment for two years on each count. Respondent has appealed his convictions *698 to the Fifth Circuit Court of Appeals, where they are now pending.
The Bar's petition for suspension was filed on November 6, five days after adjudication of respondent's guilt. On November 8, the respondent filed a petition to stay his suspension. The Bar responded on November 25, and the Court heard oral argument on December 2. On February 25, 1975, the Court directed that sequential briefs be filed on the question of suspension, with respondent's first brief to be filed not later than March 17. Respondent filed his brief on that date together with a compilation of ten "Good Character Letters" from judges and other law enforcement personnel. These letters were submitted in a standard brief cover containing a cover page formally captioned for this proceeding, and as an appendix to respondent's brief. On March 18, the Bar objected to the filing of these letters and moved to strike the brief on the ground that their inclusion was improper hearsay. The Bar's objection and motion were supplemented on April 4 with a copy of an opinion issued on March 27 by the Committee on Standards of Judicial Conduct on the impropriety of judicial character reference letters.
On April 7 the Bar filed its brief on suspension pursuant to the Court's directive. On April 14 respondent's reply brief was filed and on May 2 he requested leave to supplement his reply brief with additional facts, asserting in general that on April 16 a federal jury had acquitted Fred O. Dickinson, Jr., of all charges against him in a proceeding involving matters related and germane to respondent's jury conviction.

Issues and Jurisdiction
There is no dispute between the parties as to the fact of respondent's convictions. The main issue for our consideration has been whether he should be suspended from the practice of law pending his appeal.
It is clear and uncontroverted that this Court has jurisdiction to suspend respondent in accordance with our inherent and constitutional authority.[2]
In 1969 this Court adopted new Rules of Discipline as Article XI of the Integration Rule of The Florida Bar.[3] Within these rules is Integration Rule 11.07(3), which governs this proceeding and states:
"(3) Suspension by judgment (other than by state court). If any such determination or judgment of guilt is entered by any court other than a court of the State of Florida, the convicted attorney shall stand suspended as a member of The Florida Bar on the 11th day following the filing with the Clerk of the Supreme Court of a certified copy of such determination or judgment, accompanied by proof of service of notice of such filing upon the convicted attorney; provided, however, that if the convicted attorney shall prior to the 11th day file a petition with the Supreme Court to modify or terminate the suspension, then the suspension will be deferred until entry of an order upon the petition."[4]
The respondent, Prior, contends the suspension rule should not be applied against him (1) because he has a meritorious appeal pending; (2) because of his substantial contributions to the profession and the absence of previous misconduct; and (3) *699 because of the nature of the crime and its investigation.

Relevancy of a Pending Appeal
Respondent contends he should not be suspended pending his appeal, citing In re Ming[5] and this Court's decisions in The Florida Bar v. Cohen[6] and The Florida Bar v. Smith.[7] He also cites The Florida Bar v. Ragano, which was two separate proceedings.[8]
The real issue requires us to determine the relvancy of a pending appeal to any suspension proceeding. In analyzing the effect of an appeal on our Integration Rule 11.07(3), it is immediately apparent that paragraph (3) is not self-contained. It cannot be understood without reference to other provisions in Rule 11.07. Its opening reference is to "any such determination or judgment of guilt" (emphasis added).[9] The adjective "such" necessarily refers elsewhere in the rule for meaning. Moreover, the corollary paragraph pertaining to state court convictions, and the paragraph authorizing discipline after appeal, can only be comprehended and operate fully if they are read with paragraph (3). An integrated reading of the entire Rule 11.07 demonstrates clearly that the status of a convicted attorney's appeal is irrelevant to his suspension under that Rule.
Regarding the term "such," the obvious reference is to Rule 11.07(1), the relevant portion of which provides:
"(1) Determination or judgment of guilt. Determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction upon trial or plea of any crime or offense that is a felony under the laws of this state, or under the laws under which any other court making such determination or entering such judgment exercises its jurisdiction, shall be conclusive proof of the guilt of the offense charged for the purposes of these rules."
Unquestionably this sentence in Rule 11.07(1) was designed both to trigger the Rule and to establish proof of guilt for the purpose of suspension when a determination or judgment of guilt is made "upon trial or plea."
Regarding Rule 11.07(2) governing state court convictions, subparagraphs (b) and (c) expressly describe the later effects of an appeal on a suspension previously entered. In like manner, Rule 11.07(4) directs the continuance of any suspension under the Rule (whether resulting from a Florida, a federal or another court's determination or judgment of guilt) upon its becoming "final without appeal or by affirmance on appeal."
These related provisions, and the consistent use of the phrase "determination or judgment of guilt" throughout the Rules to mean a trial-level event, are uniform and uncontradicted. It cannot seriously be contended that our Rule is ambiguous or contemplates suspension only after a felony conviction is upheld by the last appellate court whose jurisdiction may be invoked.
Even beyond the technical clarity and internal consistency of Rule 11.07, the immateriality of appeal on the issue of suspension is commanded by logic. Paragraph (1) has made a trial-level determination of guilt "conclusive proof" of the underlying facts for the obvious purpose of preventing suspension proceedings in this Court from *700 becoming factual retrials. There is neither an adequate record nor an inherent capability in this Court to pass upon the validity of the attorney's conviction or the merits of his appeal.[10] Attempts to assess the likelihood of reversal from the arguments of counsel invite a form of speculation with which this Court should have no part.[11] A majority of other states interpreting rules or statutes similar to our rule have held that suspension may be ordered where a conviction is being appealed, even though (as our rule provides) it may be lifted if the appeal results in a reversal.[12]
Respondent contends In re Ming, supra, absolutely requires the exhaustion of all direct appeals before conviction of a criminal offense may be used as a basis of suspension. We emphatically disagree. The Ming court, in reaching its decision, recognized there was authority to suspend a lawyer while his appeal was pending, saying: "We do not, however, tie the hands of the district court so that it can never suspend a person until his conviction reaches finality."
Ming's suspension was under a federal rule applicable solely to misdemeanor charges, which is neither comparable to nor as specific as the Florida rule.[13] We do not even have a misdemeanor rule in Florida. It is clear from Ming that the federal court was only construing its own rule and was not establishing a federal constitutional guideline. The treatment of a felony conviction in the federal system more nearly parallels our own, as illustrated by the United States Supreme Court's suspension of former Attorney General John Mitchell pending an appeal, upon being furnished proof that he had been convicted of a felony.[14]
The standard for withholding suspension under our rules is identical for felony convictions emanating from both Florida and other courts.[15] Although the procedure for *701 initiating a suspension case necessarily differs,[16] the standard in all cases has been that the convicted attorney must show "good cause." This standard is expressly set out in subparagraph (a) of Rule 11.07(2) for suspensions arising from Florida convictions, and there is nothing in Rule 11.07 to suggest a different standard for suspensions arising from federal convictions. The Court recently applied a "good cause" standard in a federal conviction case by quoting the Florida conviction provision.[17]
Except in three out of 42 felony suspension cases brought to this Court since 1965, the Court has consistently held that an attorney who has been convicted of a felony should be suspended pending the appeal of that conviction.[18] These three exceptions are The Florida Bar v. Cohen,[19]The Florida Bar v. Ragano,[20] and The Florida Bar v. Smith,[21] The circumstances in those cases are vastly different from the instant case.
In Cohen, the Court exercised its discretion to defer suspension until an appeal had been decided because the Bar had failed to request suspension until approximately one year after the appeal had been filed. Significantly, Cohen also agreed voluntarily to withdraw from the practice of law pending his appeal. When later faced with another convicted attorney seeking to rely on Cohen, the Court was obliged in The Florida Bar v. Levenson[22] to note that Cohen was an extraordinary decision necessitated by the Bar's dilatory action. In Levenson the Court returned to its previous pattern and ordered the suspension of an attorney convicted of federal felonies under technical provisions of the national banking laws, even though an allegedly meritorious appeal was pending and the federal trial court had found that the attorney did not deserve serious punishment. In so doing, the Court stated:
"We do not overlook the possibility of a reversal of a conviction. While circumstances will vary situations, generally a conviction of a felony should justify suspension until the blot is removed. Conviction of a federal felony automatically suspends a lawyer from practicing in the federal courts. In the ordinary case we are not inclined to impose a lesser standard of professional responsibility in our state system." 211 So.2d at 174.
*702 After Levenson, convicted attorneys continued to ask us to defer suspensions pending appeals. In every subsequent instance but Ragano and Smith we steadfastly adhered to the principle that a pending appeal was not an extraordinary circumstance which would provide good cause to allow a convicted felon to practice law.
In the 1972 Ragano case this Court applied a relaxed standard in large part because good character letters were written by "numerous judicial and other public officers" at the request of the convicted attorney. These laudatory letters were written before the promulgation of the new Code of Judicial Conduct, and no one then suggested that they were improper. As we will discuss later in this opinion, such letters are not proper. In any event, the 1972 Ragano case is simply not consistent with earlier decisions of this Court.
Similarly, Smith can only be reconciled with precedent on the basis of the convicted attorney's agreement to suspend his practice voluntarily.
In reviewing these three past decisions, we believe it would be appropriate to recede from them insofar as they authorize this Court to consider the assertion of a meritorious appeal as a controlling factor in suspension cases.

Past Contributions to the Profession and Absence of Previous Misconduct
Respondent contends that his past contributions to the profession and the absence of previous misconduct on his part demonstrate that there is no risk to the legal profession or to his clientele for him to remain an active member of the Bar while his conviction is being appealed. We recognize that respondent has demonstrated substantial service to the Bar and has no prior disciplinary offenses. Respondent now stands convicted on five counts of making false and material declarations under oath before a grand jury. This conduct is so antithetical to the oath, the standards, and the ideals of the legal profession that it is difficult to conceive of any mitigating circumstance which would justify the respondent's continuing as a practicing member of the Bar. A lawyer is an officer of the Court, and it is our opinion that whenever a lawyer is convicted of a criminal offense directly involving the court system of which he is an officer, there must be an immediate suspension. As we stated in The Florida Bar v. Craig,[23] the appearance of a convicted attorney continuing to practice does more to disrupt public confidence in the legal profession than any other disciplinary problem. Members of the Bar must maintain a high standard of conduct. If the law is to be respected, the public must be able to respect the individuals who administer it. By failing to swiftly discipline an attorney found guilty of a serious offense, we necessarily impair the public's confidence in the law and in this Court's willingness to enforce the law evenhandedly.
The immediate suspension procedure set forth in our rules is designed to remove from public counseling and from the court system as promptly as possible, but not irrevocably, individuals who stand convicted of a felony offense. All events in an attorney's life prior to his conviction are, in effect, overwhelmed by a felony conviction. The purpose of the rule is to cleanse the profession of those who cannot themselves abide by the law. Preconviction prominence is not a balancing factor. We are not alone in this view, as is reflected by the recent decision of the Supreme Court of Washington in In re Krogh.[24]

*703 The Nature of the Crime and Its Investigation

Respondent contends that his criminal conduct is mitigated because it occurred during the course of an investigation into activities of another person, that the grand jury was not primarily concerned with the respondent's conduct, and also because no one was injured. We emphatically disagree. When an officer of the court is convicted of knowingly making false statements to a grand jury investigating corrupt practices in the government of this state, every citizen and every institution of government is harmed. More broadly, the very act of lying to a judicial tribunal strikes at the heart of the legal process and leaves as victims all who strive for justice. This Court has never condoned such conduct. On the contrary, the Court previously said in Dodd v. The Florida Bar[25] that an attorney who gives false testimony in a judicial proceeding "deserves the harshest penalty." We are not alone in this view.[26]

Character Letter Use in Disciplinary Proceedings
The procedural circumstances of this cause require us to consider the ethical and procedural use of character letters as evidence in disciplinary proceedings. In asserting his claim of good character, respondent filed with his brief character letters from twelve Palm Beach County officials consisting of six circuit judges, four county court judges, the state attorney, and the sheriff. Character letters are not proper evidence in any court proceeding. Further, this Court's directive to file briefs is not a license to submit evidence.
Character letters from members of the judiciary present an additional problem because of the restrictions contained in new Judicial Canon 2(B).[27] Recognizing that this was a new Canon and that it should be interpreted more clearly to define proper and improper conduct in the circumstances of character letters, the Judicial Qualifications Commission directed its general counsel to request an opinion on this very issue from the Committee on Standards of Judicial Conduct.[28] The Committee determined *704 that the signing and tendering of character letters by members of the judiciary in a case pending in this Court involving an attorney's suspension from practice "violated the spirit and intent of Canon 2(B)." So that the judiciary and the Bar are fully aware of the Committee's response, we have attached as an appendix to our opinion, without the formal parts, both the proposed question and the opinion response. We note that the judicial officers who submitted the character letters in this cause had no knowledge of this opinion since it was not sought or published until after the letters were submitted and filed in this cause.
The purpose of the restriction in Canon 2(B) is to ensure that the weight and prestige of judicial office will not be used to "advance the private interests of others." Respondent solicited these character references in order to avoid professional discipline. The Canon states expressly that a judge "should not testify voluntarily as a character witness." This does not mean that information and knowledge of judicial officers concerning a lawyer charged with a disciplinary violation cannot be submitted to the Court in a proper manner. When evidence of this nature is desired to be presented, it must be offered in a manner that complies with the Canon and affords Bar disciplinary counsel an opportunity to cross-examine and rebut that evidence. Character letters, irrespective of who submits them, are not proper evidence in any court proceeding and certainly should not be considered proper in a disciplinary proceeding.
It has been suggested that the letter opinion from the Florida Committee on Standards of Judicial Conduct may be in conflict with the 1973 informal opinion rendered by the American Bar Association Committee on Ethics and Professional Responsibility.[29] We disagree. The American Bar Association opinion concerned a request from state disciplinary counsel for information from local judges regarding an attorney under investigation. Responding to this request does no violence to the purpose of Canon 2(B). In no way does that request inject the prestige of judicial office for the private interests of others.

Conclusion
We conclude that respondent has not shown good cause to avoid suspension. We would grant the motion of The Florida Bar to strike from the record the character letters filed in this cause and the copies of those letters appended to respondent's brief. We would also deny the motion to supplement the record with evidence consisting of documents and testimony from the trial of Fred O. Dickinson, Jr. Finally, we would have suspended Frederick C. Prior from the practice of law in Florida summarily at a much earlier date, giving him the customary reasonable time (typically 30 days) to conclude matters then pending in his office.

APPENDIX A
"The question you present is whether or not the signing and tendering of these letters by the several judges in the case pending in the Supreme Court of Florida involving the attorney's suspension from practice was in violation of Canon 2 of the *705 Code of Judicial Conduct governing judges in Florida.
"We quote excerpts from these letters:
"1. `... I know ____ enjoyed a good reputation with the judiciary, practicing attorneys, and other members of the Bar... .'
"2. `... It is my opinion that ____ has conducted himself with honesty and integrity... . I feel he will be deserving of any consideration that this honorable Court will see fit to afford him.'
"3. `... I found him to be highly competent, honest, and frank with other persons and the Court.'
"4. `... He has always been aboveboard in his dealings with the Court.'
"5. `... He is an asset to the community and the Bar.'
"6. `... appreciate your consideration of these remarks on ____'s behalf... .'
"7. `... He is straightforward ... demonstrated professional skill and courage as well as sensitivity to the rules of Court and the rights of others. Thanking you for your consideration of my remarks... .'
"The Committee is of the opinion that the nature of these letters and the purpose they were intended to serve clearly indicates they were character reference letters and under the circumstances which they were signed and tendered to the Supreme Court, violated the spirit and intent of Canon 2(B) ... i.e., `a Judge ... should not testify voluntarily as a character witness... .'
"This Canon is sufficiently broad to encompass written statements voluntarily submitted with the knowledge and understanding that such statements may be used directly or indirectly in some adjudicatory proceeding. A written statement bearing upon the character of an individual involved either in a civil, criminal, or administrative proceeding would result in injecting the prestige of the judge's office into that proceeding to the same extent as if he voluntarily appeared at such proceedings and testified. Of course, he may be required to testify as a result of an official summons or a comparable obligatory process.
"The Committee would emphasize that while Canon 2(B) `prohibits voluntary character reference letters' written by judges on behalf of persons involved in some types of proceeding, this prohibition should be limited to investigatory or adjudicatory proceedings either of an administrative, civil, or criminal nature where a person's legal rights, duties, privileges or immunities are ultimately determined.
"The character reference letters submitted on behalf of persons seeking employment or being considered for membership in certain organizations should not necessarily be included within the provisions of Canon 2B, except as the specific case circumstances might reflect misuse or abuse of the prestige of the judicial office.
"As one member of the Committee pointed out, it is not uncommon for many recognized organizations to submit questionnaires on behalf of persons seeking membership in that organization, nor is it uncommon for federal agencies to ascertain the character of an individual being considered for federal appointment, or employment.
"We hope that the foregoing will be of some assistance to the judiciary of Florida.
"Respectfully yours,
/s/ Gunter Stephenson
GUNTER STEPHENSON, as Chairman COMMITTEE ON STANDARDS OF JUDICIAL CONDUCT"

*706 APPENDIX B
Re: Informal Opinion 1275 July 6, 1973
 Judge Answering Inquiry
 From State Disciplinary
 Counsel About the Character
 of a Lawyer
You ask, if a complaint is made against a lawyer by Disciplinary Counsel in ( ) and Disciplinary Counsel writes to a judge or judges in the county where the lawyer is located asking for information as to the experience of the judge with that particular lawyer and his opinion as to his ethical attitudes and practices, whether or not it would be improper for the judge to answer these questions. If he does answer them, should he confine the information he gives the Disciplinary Counsel to facts appearing of record in some litigation with which the judge is familiar?
The Code does not prevent a judge from answering questions about a lawyer addressed to him by Disciplinary Counsel (Canon 2(B) of the Code of Judicial Conduct obviously does not apply), but, likewise, it does not require him to answer such questions. As you know, the rules of this Committee do not permit it to give opinions on questions of law, and the Committee finds it undesirable to get involved in questions of fact except those placed before it by the inquiry. Accordingly, we find nothing unethical in Disciplinary Counsel referring such inquiries to judges, but we do not think that judges have the obligation to answer the inquiries. We also find no restrictions on the answers the judges can give, as long as the answers are unbiased and truthful. Relations between lawyers and judges are not usually confidential unless some special facts exist which have not been called to the attention of the Committee.
BOYD, Justice (concurring in part and dissenting in part).
The present rule does not provide for the automatic suspension of all attorneys convicted of felonies. I have long sought to change the rule to require such suspensions to protect the public from possible detriment and maintain confidence in the profession. We must apply the existing rule to this case in view of all facts and circumstances known to the Court.
Petitioner had maintained a successful practice for many years with a reputation unmarred except for the convictions mentioned in the majority opinion. He has continued to practice since he was convicted on September 25, 1974, without other charges of misconduct known to this Court.
We have held that suspension and disbarment are not used as punishment but as protection of the public and to maintain high standards in the profession. State ex rel. Florida Bar v. Rubin, 142 So.2d 65 (Fla. 1962). The Florida Bar v. Winn, 208 So.2d 809 (Fla. 1968).
I disagree with the dissenting opinion's contention that convicted attorneys are not subject to the rule requiring suspension until their appeals have been unsuccessfully concluded and I disagree with the majority view criticizing judges who, in good faith, under what I consider American Bar standards, wrote character letters to this Court concerning Petitioner's fitness to practice law. At that time there was no construction of rules of judicial conduct in Florida prohibiting same. If the Court considers such letters improper, it is my view that it would be more appropriate to simply strike same from the record without the comment contained in the special concurring majority opinion.
I agree with the majority opinion that persons convicted of felonies in state or federal courts should be suspended from the practice of law until such time as their convictions may be reversed.
The records of this Court reveal that after being convicted of felonies forty-five attorneys have petitioned this Court to delay their suspensions from the practice of *707 law while their criminal convictions were being appealed. Two of them voluntarily withdrew from the practice of law while their convictions were under appeal. One was permitted to practice law pending his criminal appeal under conditions which the Court considered to be extremely unusual, and the other forty-two attorneys were suspended shortly after their criminal convictions, subject to being reinstated upon reversal of such criminal convictions. Equal protection of the law requires that Petitioner be accorded the same treatment as other attorneys under similar conditions.
Accordingly, I concur in the order suspending Petitioner, but for the benefit of his clients and in order that he may orderly conclude an unusually busy law practice, I would make the suspension effective at the end of sixty (60) days from the date of this order.
ROBERTS, Justice (dissenting).
Petitioner, Frederick C. Prior, a member of The Florida Bar with an outstanding record for citizenship and service to the Bar, responding to a subpoena, testified before a federal grand jury in Tampa, Florida, which was investigating the State Comptroller. As a result of his testimony, he was indicted and convicted of violation of Title 18, Section 1623, of the United States Code which makes it a "federal" felony knowingly to make any false material declaration in sworn testimony before a grand jury, and in the fall of 1974, was found guilty of five of the counts. His conviction was promptly appealed to the Fifth Circuit, Court of Appeals of the United States, while appeal is now pending. As a result of the action of the trial court, The Florida Bar shortly after his conviction filed a copy of the trial court judgment with this Court seeking his suspension under Florida Integration Rule 11.07, Subsection (3). Prior timely filed a petition as provided in the rule to stay the suspension pending the consideration of his appeal.
Section 15, Article V, Constitution of Florida, provides:
"Attorneys; admission and discipline.  The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted." (Emphasis supplied)
I construe the word "exclusive" provided in the Constitution, supra, to mean that this Court has the exclusive, sole and only jurisdiction in the matter. Rules, Bar Proceedings, depositions, letters, testimony and otherwise are merely aids to this Court in the exercise of it exclusive discretion under the Constitution. The question, sub judice, is whether or not Prior should be accorded the consideration given to a common criminal, the latter having the right to a supersedeas and stay of a trial court action pending an appeal. The Integration Rule of The Florida Bar involved in this proceeding provides:
"Article 11, Rule 11.07, Integration Rule, Subsection (3). Suspension by judgment (other than by state court). If any such determination or judgment of guilt is entered by any court other than a court of the State of Florida, the convicted attorney shall stand suspended as a member of The Florida Bar on the 11th day following the filing with the Clerk of the Supreme Court of a certified copy of such determination or judgment, accompanied by proof of service of notice of such filing upon the convicted attorney; provided, however, that if the convicted attorney shall prior to the 11th day file a petition with the Supreme Court to modify or terminate the suspension, then the suspension will be deferred until entry of an order upon the petition." (Emphasis supplied)
Obviously, it was the intention of the Court in approving the rule to reserve jurisdiction, as it should, for the ultimate exercise of discretion here. This view was recognized by this Court in The Florida Bar v. Smith, 301 So.2d 768 (Fla. 1974), in *708 its unanimous decision authored by the distinguished former Justice of this Court and former Attorney General, Richard W. Ervin, in which the Court said:
"This Court does not consider that it is discretionless in the premises or that it must pro forma disapprove of every petition of a convicted attorney to defer suspension of him pending appeal. The rule as written does not dictate such an inexorable or Draconian result or remove from this Court what has traditionally been the province of the courts in punishment or disciplinary proceedings to take into account mitigating circumstances in particular cases. There is abroad in the nation today a great deal of thinking that harsh and indurate punishments are self-defeating in many cases and that a large number of the convicted can be trusted even after conviction not to be a present danger to the public if they are extended rehabilitative assistance and humane treatment and are not pushed to the point of no return for re-entry upon a sober law abiding productive life.
* * * * * *
"It is our view that Respondent Smith and his counsel have in this matter demonstrated sufficient good cause to justify our modification of the suspension of Respondent pending his appeal to the United States Court of Appeals for the Fifth Circuit."
Furthermore, this Court in the case of Duggar v. State, 43 So.2d 860 (Fla. 1949), many years ago held that conviction of a felony in a federal court is not synonymous with conviction of a felony in the state court.
Prior buttressed his petition by filing letters of recommendation that he not be barred from the practice of law pending his appeal from every Circuit Judge in his resident Circuit before whom he practiced, the County Judge, the State Attorney, and the Sheriff. Excerpts from the letters which urge that Prior not be suspended pending his appeal of the federal conviction provide interesting and valuable assistance in the exercise of our discretion here.
Honorable James R. Knott, the distinguished veteran Circuit Judge in Palm Beach (Fifteenth Circuit), where Prior resides said:
"I have known Mr. Prior since his graduation from law school and have observed him closely as a lawyer and as a fellow citizen. He has maintained an excellent reputation in the community, as a citizen and as an attorney, and has been particularly well known throughout this area for his leadership in civic activities and charitable endeavors. His reputation for ability and integrity have never been questioned here, in his home town, where he is best known."
Honorable Culver Smith, Circuit Judge, Fifteenth Judicial Circuit, said:
"Mr. Prior, in his practice, has conducted himself in accordance with the best traditions of the Bar. His conduct in court has always been above reproach and I have never heard of any question concerning his representation of his clients ably and ethically."
Honorable Hugh MacMillan, Circuit Judge, Fifteenth Judicial Circuit, said:
"I have known Mr. Prior and his family as good friends since his admission to The Florida Bar in 1951. He has been outstanding in his family life, and civic activities, and has always enjoyed a high professional reputation with the bench and bar of this Circuit."
Honorable Paul Douglas, Circuit Judge, Fifteenth Judicial Circuit, said:
"Not only has he been a leader in civic and charitable activities, but he has made an even larger contribution of time and effort toward improving the legal profession... . He is respected by the Bench and Bar in this community as *709 well as by his many friends and clients. He is totally reliable and trustworthy and I believe it is highly unlikely that any harm would be done to allow him to continue as a member of the Bar pending his appeal."
Honorable Emery Newell, Circuit Judge, Fifteenth Judicial Circuit, who has known Mr. Prior for 25 years, said:
"I do know he is a skilled attorney and has always conducted himself in a proper and ethical manner before the bench.
"... My point is this  if one individual is enabled to prove his integrity and responsibility after many convictions in a relatively short period of rehabilitation [referring to a young man who was convicted of numerous felonies admission to a law school], then another individual whose worth and value to the community has been demonstrated for more than two decades should be allowed to continue in his profession until the judicial process has run its full course and guilt or innocence finally determined."
Honorable Thomas Sholts, Circuit Judge, Fifteenth Judicial Circuit, who has known Mr. Prior for 15 years, said:
"To my knowledge, he has never been convicted or tried for any criminal offense (other than the present conviction) or become the subject of any grievance committee investigation or any other proceeding questioned his ethical conduct as an attorney. On the contrary, he has been active in charitable organizations and bar functions."
Honorable W.C. Williams, III, County Court Judge of Palm Beach County, who has known Mr. Prior for more than thirty-five years, said:
"Mr. Prior's reputation for honesty and integrity in public service is widely known, not only in Palm Beach County, but throughout the state of Florida.
"Certainly there could be no reason whatsoever why he should not be allowed to continue in his practice, pending his appeal."
Honorable Howard Harrison, Jr., County Court Judge, Palm Beach County, said:
"We have been acquainted with Mr. Prior for some time and have observed him to be a capable attorney who enjoyed unimpeccable reputation within this Court and the community."
Honorable David H. Bludworth, State Attorney, Fifteenth Judicial Circuit, said:
"In my capacity of State Attorney in Palm Beach County, Florida, and former State Attorney, I have had the occasion to know Mr. Ted Prior both socially and professionally. It has always been my experience in dealing with Mr. Prior that he is a person who has laid his cards on the table and whose word was totally reliable. I know his legal ability is excellent and that his clients are ably represented when he is their attorney. It appears to me that his continuing to represent these clients pending the outcome of his appeal would not prejudice either the clients or the other members of the Florida Bar Association."
Honorable William R. Heidtman, Sheriff of Palm Beach County, said:
"During these years, I have known of Mr. Prior as being a very capable attorney who, to the best of my knowledge, always conducted himself in a professional manner.
"... To the best of my recollection, I have never known of him to request or suggest anything improper on behalf of himself or his clients."
But The Florida Bar contends that we should blind ourselves to the tributes paid Prior by the Judges before whom he practices and strike the testimonials in deference to an opinion by the Florida Circuit Judge Disciplinary Committee which has no responsibility or authority to bind this Court. For many decades, Florida has followed *710 the American Bar Association in prescribing rules pertaining to judicial conduct and the construction thereof, and we are, therefore, more impressed by an opinion of the Advisory Committee of the American Bar Association of July 6, 1973, which said:
"You ask, if a complaint is made against a lawyer by Disciplinary Counsel in ( ) and Disciplinary Counsel writes to a judge or judges in the county where the lawyer is located asking for information as to the experience of the judge with that particular lawyer and his opinion as to his ethical attitudes and practices, whether or not it would be improper for the judge to answer these questions. If he does answer them, should he confine the information he gives the Disciplinary Counsel to facts appearing of record in some litigation with which the judge is familiar?
"The Code does not prevent a judge from answering questions about a lawyer addressed to him by Disciplinary Counsel (Canon 2(B) of the Code of Judicial Conduct obviously does not apply), but, likewise, it does not require him to answer such questions. As you know, the rules of this Committee do not permit it to give opinions on questions of law, and the Committee finds it undesirable to get involved in questions of fact except those placed before it by the inquiry. Accordingly, we find nothing unethical in Disciplinary Counsel referring such inquiries to judges, but we do not think that judges have the obligation to answer the inquiries. We also find no restrictions on the answers the judges can give, as long as the answers are unbiased and truthful. Relations between lawyers and judges are not usually confidential unless some special facts exist which have not been called to the attention of the Committee."
From our personal standpoint, since we have the "exclusive" responsibility for the exercise of discretion in this matter, I take my stand to lean on the expressions of confidence and certificates of good character by the judges before whom he practices and other law enforcement officers in his area who know him best rather than the finding of a jury in a strange area more than 200 miles from his residence and which case was tried during a hostile flow of media propaganda. My view in this matter is supported by the logic and reasoning opined and judgment in In re Ming, 469 F.2d 1352 (7th Cir., 1972), in which the United States Court of Appeals, Seventh Circuit, in a comparable situation said:
"Irrespective of whether Ming's conduct on which he was convicted would suffice as a basis for suspension, his professional interregnum was for the conviction not the constituent conduct thereof. Although we have not been shown any case directly on point, interpretation of the word `convicted' was before this court in an analogous case involving a conviction for possession of marijuana and whether it would serve as a statutory basis for deportation under 8 U.S.C. § 1251(a)(11). We there stated, ... the Section contemplates a convictioin which has attained a substantial degree of finality... . We therefore hold that as long as a direct appeal is pending, it is sufficient to negate finality of conviction... .' Will v. Immigration and Naturalization Service, 447 F.2d 529, 531 & 533 (7th Cir., 1971).
"We are not unmindful of policy factors which underlie the case of a lawyer convicted of a crime. The public may generally and justifiably entertain doubt as to whether an attorney, supposedly devoted to upholding the law, should himself participate as a practitioner in the profession while in the position of having been recently found guilty of conduct in derogation of the law. In Will, the convicted defendant was an alien. It has been said the `lawyers also *711 enjoy first-class citizenship,' Spevack v. Klein, 385 U.S. 511, 516, 87 S.Ct. 625, 629, 17 L.Ed.2d 574 (1967). In looking at the panoply of individual rights, we do not find a basis for awarding a citizen lawyer a lesser position than the alien.

* * * * * *
"... if the conviction itself is to be used to show that the appellant actually committed the underlying acts which are of such a nature as to form the basis for disbarment or suspension that that conviction must have reached finality, at least to the extent of exhaustion of direct appeals. Since appellant has the possibility of filing for a writ of certiorari in the United States Supreme Court, we do not think that the affirmance of his criminal conviction by this court moots this point." (Emphasis supplied)
Under the American system of jurisprudence, the lowest criminal that roams the earth is entitled to the presumption of innocence until that presumption has been removed by a final judgment of guilt and our great constitutional system guarantees to every person at least one appellate review before his conviction is final. To me it is illogical and unthinkable to extend this presumption to a common criminal of the worst type but withhold it from a citizen of exemplary conduct save the one matter involved in this proceeding. The Florida Bar in court appearances often take the lofty position that they are only trying to protect the public against unscrupulous lawyers. I ask now what unscrupulous misconduct would adversely affect the welfare of the people in the resident area of the petitioner, particularly when every Circuit Judge and other officials have vouched for his prestige, reliability, good character, and standing.
I cannot accept the weak explanation of the Bar that they are not trying at this time to disbar Prior but only to suspend his pendente lite. From a practical stand-point, the result is the same. He must close his office in either event.
This Court has long been committed to the proposition that a license is a property right and may have a definite fixed value. Likewise, an established clientele, built over a long period of years, is a valued asset. It is doubtful whether this established clientele built over a long period of time could ever be rebuilt, even if the criminal conviction should be overturned. In the posture in which we now view this case and the defendant not having yet exhausted the appellate review to which he is constitutionally entitled, it would, in my opinion, violate the whole concept of American jurisprudence to take his license and destroy his clientele prior to the running of the appellate process, and in my opinion to do so would be to deprive him of a property right without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. It is fundamental that a determination by a trial court does not amount to a conviction until the time for the appeal has expired or the appellate process has run its course. For that reason and the other reasons hereinabove set forth, I exercise our exclusive discretion vested in us under Section 15, Article V, Constitution of Florida, and Article 11, Rule 11.07, Integration Rule, Subsection (3), of The Florida Bar Rules, to withhold the suspension until the appellate process has run its course. If his conviction should ultimately be affirmed, perhaps disbarment would be in order, but until we reach that stage in the proceedings, the property right of Frederick Prior to use his license to practice law and to service the clientele which he has established must remain inviolate, so, the Motion to Strike the Testimonials should be denied and the Petition to Stay Pendente Lite should be granted.
For the foregoing reasons, I respectfully
Dissent.
ADKINS, J., concurs.
NOTES
[1] United States v. Prior, Case No. 74-117-Cr. T-H (M.D.Fla. 1974).
[2] See Fla. Const., art. V, § 15 (formerly Fla. Const., art. V, § 23 (1885));

The Florida Bar v. Massfeller, 170 So.2d 834 (Fla. 1964).
[3] In re The Florida Bar, 225 So.2d 881 (Fla. 1969). The Rule is reproduced in 32 F.S.A., beginning at 86 (1975-76 Pocket Part). Later amendments to Article XI have not changed paragraph (3), which governs this proceeding. Before 1969, a similar set of disciplinary rules were in effect. See 32 F.S.A., beginning at 511 (1967).
[4] Rule 11.07(3) appears in 32 F.S.A. at 105 (1975-76 Pocket Part). Its comparable pre-1969 predecessor, Rule 11.08(3), appears at 32 F.S.A. 544 (1967).
[5] 469 F.2d 1352 (7th Cir.1972).
[6] 191 So.2d 49 (Fla. 1966).
[7] 301 So.2d 768 (Fla. 1974).
[8] The first suspension proceeding concerned Ragano's initial conviction in 1972. 270 So.2d 3 (Fla. 1972). The second concerned a suspension proceeding for a 1974 felony conviction. Case No. 45,680 (Fla., filed November 27, 1974), vacated and superseded (Fla., filed November 4, 1975). Accordingly, the Court's 1974 opinion now is not precedent.
[9] The adjective "such" is also used in paragraph (2) to describe the class of Florida judgments which trigger suspensions.
[10] It is important to note that the record before this Court contains no facts relative to Prior's trial or supportive of his suggestion that a "Watergate atmosphere" surrounded his trial. His brief contains a narrative of unverified circumstances which, it is alleged, produced his convictions. These are not matters of which we can properly take cognizance. Respondent Prior apparently recognizes that we cannot go outside the record when he states: "No attempt is made here to retry that matter before this Court." Respondent's Br. 8.
[11] The danger of guessing the outcome of an appeal in another tribunal was illustrated when the Court was required to vacate, after an affirmance of the convictions, an opinion which had taken cognizance of the circumstances surrounding the trial, the nature of the crime, and the prospects of reversal on appeal. The Florida Bar v. Ragano, supra note 8. Even more recently a conviction was affirmed on November 17, 1975, by the Fifth Circuit Court of Appeals in the case which generated The Florida Bar v. Smith, supra note 7. In that case this Court had reviewed trial testimony submitted in support of Smith's plea to defer suspension and concluded "that his counsel's representation that good cause may exist for a reversal should not be rejected by us out of hand." 301 So.2d at 772.
[12] See, e.g., Ex Parte Alabama State Bar, 285 Ala. 191, 230 So.2d 519 (1970); Williford v. State, 56 Ga. App. 840, 194 S.E. 384 (1937); In re Minner, 133 Kan. 789, 3 P.2d 473 (1931); In re Lindheim, 195 App. Div. 827, 187 N.Y.S. 211 (1921); In re Kirby, 10 S.D. 322, 73 N.W. 92 (1897).
[13] "Federal Rule 8. Discipline of Attorneys; Reinstatement.

"... After notice and opportunity to respond, the judges of the Executive Committee may order the disbarment or suspension of any attorney who (1) has resigned from the bar of another court, or (2) has been convicted of a misdemeanor ... ." [Emphasis supplied]
Our rule is set out in 32 F.S.A. at 86 (1975-76 Pocket Part).
[14] In re Disbarment of Mitchell, 420 U.S. 1001, 95 S.Ct. 1442, 43 L.Ed.2d 759 (filed March 31, 1975). See also Barnes v. Lyons, 187 F. 881, 885-86 (9th Cir.1911); In re Kirby, 84 F. 606 (D.S.D. 1898).
[15] The 1969 change from Rule 11.08(3) to Rule 11.07(3) was described to the Court in the Bar's brief in support of the change in the following way: "This rule provides for automatic interim suspension upon conviction of a felony by a court other than a court of the State of Florida. It places convictions by such courts on the same basis as convictions by courts of the State of Florida. Under present Rule 11.08(3) suspension in the former case is not automatic but must be requested by The Florida Bar." Appendix to Brief for Petitioner at 23, In re The Florida Bar, 225 So.2d 881 (Fla. 1969).
[16] Automatic filing of Florida trial court judgments is required by Rule 11.07(1).
[17] The Florida Bar v. Smith, supra note 7 at 772.
[18] Since 1965 the Court has considered 42 suspension cases. Eleven of these involved federal convictions during the pendency of an appeal. See The Florida Bar v. Clark, 323 So.2d 579 (Fla., filed November 19, 1975); The Florida Bar v. Rothstein, Case No. 48,074 (Fla., filed November 7, 1975); The Florida Bar v. Ragano, supra note 8; The Florida Bar v. Smith, supra note 7; The Florida Bar v. Ferrer-Roo, Case No. 44,354 (Fla., filed March 7, 1972); The Florida Bar v. Matthews, Case. No. 42,018 (Fla., filed March 7, 1972); The Florida Bar v. Kastenbaum, 241 So.2d 688 (Fla. 1970); The Florida Bar v. Jenkins, 254 So.2d 785 (Fla. 1971); The Florida Bar v. Von Zamft, 212 So.2d 303 (Fla. 1968); The Florida Bar v. Levenson, 211 So.2d 173 (Fla. 1968); The Florida Bar v. Cohen, 191 So.2d 49 (Fla. 1966). Four involved Florida convictions in which a pending appeal was asserted in mitigation. See The Florida Bar v. Barket, Case No. 48,125 (Fla., filed November 7, 1975); The Florida Bar v. Spiegel, Case No. 48,168 (Fla., filed December 1, 1975); The Florida Bar v. Craig, 238 So.2d 78 (Fla. 1970); The Florida Bar v. C. Smith, Case No. 38,703 (Fla., filed June 10, 1969). Suspension was ordered in 39 out of the 42 cases.
[19] 191 So.2d 49 (Fla. 1966).
[20] 270 So.2d 3 (Fla. 1972).
[21] 301 So.2d 768 (Fla. 1974).
[22] 211 So.2d 173 (Fla. 1968).
[23] 238 So.2d 78, 80 (Fla. 1970).
[24] 85 Wash.2d 462, 536 P.2d 578 (filed June 6, 1975). On June 6, 1975, the Supreme Court of Washington disbarred Egil Krogh, an attorney whose felony conviction arose out of his behavior while acting as counsel to the President of the United States. The court there went to great lengths in weighing Krogh's felony conviction against the good character testimony that had been generated on Krogh's behalf. It concludes (at page 586): "The record supports the panel's findings to the extent that those who testified in his behalf asserted that his reputation is very good indeed. However, we cannot lose sight of the fact that the vast majority of the people do not have the advantage of this intimate knowledge of the respondent and his character. They know only his crime and the role that he played... . We cannot rightly assume that with them, his reputation is `beyond reproach.' We are not prepared to agree with the panel that the respondent's reputation was established beyond cavil by the testimony of the witnesses who appeared in his behalf."
[25] 118 So.2d 17 (Fla. 1960).
[26] The precise statutory offense for which respondent has been convicted has been described as perjurious by the United States Supreme Court, United States v. Kahan, 415 U.S. 239, 240, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974) (per curiam), and the giving of false testimony has been held actionable for the purpose of disciplining attorneys in Alabama, In re Sullivan, 283 Ala. 514, 219 So.2d 346 (1969); New York, In re Abrams, 38 A.D.2d 334, 329 N.Y.S.2d 364 (1972); Oklahoma, State ex rel. Oklahoma Bar Assn. v. Pate, 441 P.2d 393 (Okl. 1967); and Utah, In re King, 7 Utah 2d 258, 322 P.2d 1095 (1958) (subornation of perjury actionable).
[27] The commentary for Canon 2, which was adopted as a part of the new Code of Judicial Conduct effective September 30, 1973, distinguishes between the prohibited testimony of a judge as a character witness in a proceeding, as here, and the required testimony of a judge in furtherance of the administration of justice. In re The Florida Bar  Code of Judicial Conduct, 281 So.2d 21, 24 (Fla. 1973). In contrast to this relatively new standard, Section 13 of Florida's prior Code of Ethics Governing Judges only required that a judge "should not suffer his conduct to justify the impression that any person can ... unduly enjoy his favor, or that he is affected by the ... position of influence of any ... other person." 32 F.S.A. 594 (1960).
[28] The Committee on Standards of Judicial Conduct was created by resolutions of the Conference of Judges of District Courts of Appeal and the Conference of Circuit Judges of Florida. The responsibility of the committee was to receive for the executive authority of The Florida Bar, the Judicial Qualifications Commission, and active members of the Florida judiciary, hypothetical questions involving the obligations, duties, and responsibilities of judges under the official standards governing the conduct of judges. The committee has been rendering opinions since 1973, which are reported in the Florida Bar Journal.
[29] Informal Opinion 1275 dated July 6, 1973, of the American Bar Association Committee on Ethics and Professional Responsibility is attached as Appendix B.