473 So.2d 1250 (1985)
THE FLORIDA BAR, Complainant,
v.
Daniel Neal HELLER, Respondent.
No. 66841.
Supreme Court of Florida.
June 13, 1985.
Rehearing Denied September 5, 1985.
*1251 John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel, Tallahassee, and Patricia S. Etkin, Asst. Staff Counsel, Miami, for complainant.
Alan C. Sundberg and George N. Meros, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tallahassee, for respondent.
PER CURIAM.
Having been convicted of three counts of income tax evasion and three counts of falsely subscribing to an income tax return, Daniel Neal Heller has filed a petition to avoid his immediate suspension from the practice of law. Under the Integration Rule of The Florida Bar, article XI, rule 11.07, the filing of a notice of a felony conviction, properly documented, causes an automatic suspension unless a petition such as that filed by Heller is granted by this Court.
Heller's petition to withhold suspension from The Florida Bar is based in part on the argument that the federal criminal convictions were obtained by means of a prosecution and trial that did not conform to basic minimum standards of fairness required under the Florida Constitution. He also complains of religious bias. In The Florida Bar v. Prior, 330 So.2d 697 (Fla. 1976), in which this Court suspended a lawyer based on federal convictions, a special concurring opinion by two members of the Court said:
[A] trial-level determination of guilt [is] "conclusive proof" of the underlying facts for the obvious purpose of preventing suspension proceedings in this Court from becoming factual retrials. There is neither an adequate record nor an inherent capability in this Court to pass upon the validity of the attorney's conviction or the merits of his appeal. Attempts to assess the likelihood of reversal from the arguments of counsel invite a form of speculation with which this Court should have no part. A majority of other states interpreting rules or statutes similar to our rule have held that suspension may be ordered where a conviction is being appealed, even though (as our rule provides) it may be lifted if the appeal results in a reversal.
Id. at 699-700 (Overton, C.J., and England, J., concurring specially) (footnotes omitted). The approach suggested by the above-quoted words has been predominant in this Court's disposition of petitions to withhold suspension sought on the ground of felony conviction. Thus the legal correctness of the judgment of conviction, as it is likely to be perceived by the court with jurisdiction of the appeal, is ordinarily beyond the scope of this Court's consideration of a petition such as that before us in this case. In general, the judgment of conviction of a felony is conclusive proof of the commission of the felony and, on the basis of the wrongdoing thus shown, immediate suspension is considered appropriate.
On the other hand, the rule as written expressly gives this Court the discretion to defer suspension for good cause. The rule clearly does not contemplate that the Court "must pro forma disapprove of every petition of a convicted attorney to defer suspension of him pending appeal." The Florida Bar v. Smith, 301 So.2d 768, 771 (Fla. 1974).
We note that in his order denying post-conviction relief, the trial judge recited findings which clearly show a misuse of trust funds and an abuse of Heller's trust account.[*] This factor, coupled with the *1252 convictions and the trial judge's other factual findings, cause us to conclude that Heller's motion should be denied and he should be suspended pending his federal court appeal. This suspension shall be effective July 15, 1985, thereby giving respondent thirty days to close out his practice and take the necessary steps to protect his clients. Respondent shall accept no new business.
It is so ordered.
ADKINS, OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
BOYD, C.J., concurs specially with an opinion with which SHAW, J., concurs.
BOYD, Chief Justice, concurring specially.
Under article XI, rule 11.07 of the Integration Rule of The Florida Bar, this Court has the authority to withhold the automatic suspension that otherwise would routinely be imposed on an attorney convicted of a felony, notwithstanding the fact that the felony conviction is a presumptive demonstration of serious wrongdoing. The rule only requires that this Court be satisfied that there is "good cause" to withhold, modify, or terminate the suspension.
Respondent's petition to withhold suspension sets forth the following factual allegations pertaining to his trial, supported by excepts from the federal trial record, which are not disputed by The Florida Bar:
(1) During the trial, several of the jurors made comments showing a substantial anti-Semitic bias. These jurors ridiculed respondent, his attorney, and several of his witnesses because they were Jewish. One of the jurors made a comment using words to the effect that respondent was "a rich Jew. I say let's hang him." There were other comments like this, including not only ethnic slurs against Jews but also antiblack racial slurs.
(2) Not only did the jurors improperly discuss the facts of the case before hearing all the evidence, but they also expressed their opinions about guilt-or-innocence before hearing all the evidence. The facts alleged by respondent raise a strong inference that the jury prejudged his guilt, in large part because of the religion-based antipathy referred to above.
(3) One juror consulted an accountant, a complete stranger to the case, on a question of accounting practice which the juror thought was relevant to the issues, received an answer and reported the extraneous information to the other jurors. There is no way of knowing how this highly improper information affected the jury's deliberations.
As was stated above, the rule reserves to this Court the discretion to withhold or modify the suspension of a lawyer for good cause. I find the undisputed allegations of juror misconduct in this case so shocking that, in my opinion, if there is ever a case where the exercise of such discretion is warranted, this would be such a case. There would be no danger to his clients or to the public in permitting the respondent a reasonable time to wind up the legal business of his clients and to seek immediate appellate review of his convictions.
The majority opinion makes reference to the findings of the federal district judge, in the order denying respondent's motion for new trial, pertaining to conduct characterized as violative of Florida Bar trust account regulations. Respondent was on trial in federal court for violations of the income tax laws and was not at that time prepared to defend himself against accusations of trust account violations. If trust account violations are to be the basis for his suspension, they should be set forth in a complaint and tried before a referee appointed by this Court in the usual manner. Respondent has not had a meaningful opportunity to respond to the charge of trust account violations since, at the federal trial, it might have been detrimental to his defense against the tax evasion charges to try to also defend himself against suggestions of trust account misuse. It is a matter *1253 of fundamental fairness that one is only expected to respond to charges that have been specifically set forth in advance.
I fully agree with the long-standing policy of this Court that attorneys convicted of felonies should be suspended. The extraordinary circumstances in the present case prompt me to suggest a short delay in the effective date of the suspension for the above-stated reasons.
If, as respondent's petition suggests, there was impropriety at the trial amounting to reversible error clearly calling for reversal on appeal, I am confident that the United States Court of Appeals for the Eleventh Circuit will give the appropriate relief in a timely fashion.
For the foregoing reasons I would enter an order suspending respondent from the practice of law effective September 30, 1985.
SHAW, J., concurs.
NOTES
[*] The trial judge found monies were transferred from the trust account when the regular account bank balance was low or when Heller directed a transfer for other reasons. The trust fund monies were also used by Heller to purchase personal items and Heller took out "loans" from the trust account without the clients' knowledge or permission.